UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JEANNETTA M. H,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:24-cv-01205-TWP-MG |
| | ) |
| FRANK J. BISIGNANO Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

In December, 2021, Plaintiff Jeannetta H. applied for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act from the Social Security Administration ("SSA"), alleging a disability onset date of September 20, 2018. [Filing No. 9-2 at 33.]

After denials at the initial and reconsideration levels, [Filing No. 9-3 at 36-38], Jeannetta H. filed a request for a hearing before an Administrative Law Judge. A hearing was held on October 16, 2023, before Administrative Law Judge Noell Allen (the "ALJ"). [Filing No. 9-2 at 33.] Although informed of her right to representation, Jeannetta H. chose to appear and proceed without an attorney or other representative. On January 30, 2024, the ALJ issued a decision denying Jeannetta H. benefits. The Appeals Council denied request for review on May 23, 2024.

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[Filing No. 9-2 at 2.] On July 18, 2024, Jeannetta H. filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g). [Filing No. 1.]

The Court referred this matter to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b). [Filing No. 14.] For the following reasons, the undersigned **RECOMMENDS** that the Court **AFFIRM** the decision of the ALJ denying Jeannetta H. benefits.

# I.
## STANDARD OF REVIEW[2]

"The [SSA] provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Id.* For purposes of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring

---

[2] The regulations governing disability determinations for benefits under Title II and Title XVI are identical in virtually all relevant respects unless otherwise noted.

instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform His past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at step four to determine whether the claimant can perform His own past relevant work and if not, at step five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v). The burden of proof is on the claimant for steps one through four; only at step five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

Jeannetta H. was 46 years old on September 20, 2018—the date of her alleged onset of disability. [Filing No. 11 at 5.] Jeannetta H. has a high school education and has past work experience as a food truck operator and truck driver. [Filing No. 11 at 5.] Jeannetta H.'s December, 2021 application alleges that she can no longer work because she has poor vision, arthritis, depression, uncontrollable high blood pressure, bilateral carpal tunnel syndrome, cervical radiculopathy, chronic bilateral low back pain with right-sided sciatica, lipoma of the left lower extremity, and cervical spondylosis with radiculopathy. [Filing No. 11 at 5.] Following the October 2023 hearing, the ALJ followed the five-step sequential evaluation set forth in 20 C.F.R. § 416.920(a)(4) and concluded that Jeannetta H. was not disabled. [Filing No. 9-3 at 30-47.] Specifically, the ALJ found as follows:

- At Step One, Jeannetta H. has not engaged in substantial gainful activity[3] since September 20, 2018 (the alleged onset date). [Filing No. 9-3 at 36.]

---

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

4

- At Step Two, Jeannetta H. "has the following severe impairments: anxiety, depression, cervical spondylosis with radiculopathy, lumbar degenerative disc disease with radiculopathy, hypertension, carpal and cubital tunnel syndrome, and obesity". [Filing No. 9-2 at 36.]

- At Step Three, Jeannetta H. did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). [Filing No. 9-2 at 36.]

- After Step Three but before Step Four, Jeannetta H. had the RFC to perform light work as defined in 20 CFR 404.1567(b) except she can perform frequent reaching, handling, fingering, and feeling bilaterally. The claimant can climb ramps and stairs occasionally, never climb ladders, ropes, or scaffolds; frequently balance and stoop, and occasionally kneel, crouch, and crawl. The claimant can never work at unprotected heights, can frequently work with moving mechanical parts, frequently operate a motor vehicle, and work in moderate noise. The claimant is able to perform simple, routine and repetitive tasks but not at a production rate pace, and she is able to make simple work-related decisions. The claimant is able to interact with supervisors and coworkers occasionally but can never work in-tandem or in group settings. The claimant can have no interaction with the public. The claimant is able to occasionally tolerate few changes in a routine work setting. [Filing No. 9-2 at 39.]

- At Step Four, the ALJ found Jeannetta H. was unable to perform any past relevant work. [Filing No. 9-2 at 45.]

- At Step Five, relying on the VE's testimony and considering Jeannetta H.'s age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that she can perform, such as office helper, mail clerk, and marker. [Filing No. 9-2 at 47.]

### III.
### DISCUSSION

Jeannetta H. raises two issues for the Court's review, that the ALJ erred by failing to create a logical bridge in failing to account for her low vision in the RFC, and by failing to properly address SSR 16-3p in her subjective symptom evaluation. [Filing No. 11 at 4.]

A. **The ALJ did not err in failing to incorporate an RFC limitation for Jeannetta H.'s low vision**

First, Jeannetta H. contends that the ALJ erred by finding her low vision in her left eye to be a non-severe impairment and failing to account for the deficient bilateral vision in her RFC. Jeannetta H. argues that each of the jobs the ALJ found her capable of performing require "at least frequent near acuity." [Filing No. 11 at 12.] Jeannetta H. argues that, because the ALJ found several of her impairments to be severe (including anxiety, depression, cervical spondylosis with radiculopathy, lumbar degenerative disc disease with radiculopathy, hypertension, carpal and cubital tunnel syndrome, and obesity), the ALJ was required to consider "the aggregate effect of this entire constellation of ailments—including those impairments that in isolation are not severe." [Filing No. 11 at 12, quoting 20 C.F.R. § 404.1523.] Jeannetta H. argues that because the RFC did not contain a limitation for her low vision, and because the hypothetical question to the vocational expert was based on the RFC, the hypothetical question was flawed. Thus, the ALJ's determination based on the flawed questioning cannot stand. [Filing No. 11 at 14.]

In response, the Commissioner contends that Jeannetta H.'s arguments about the flawed RFC are largely boilerplate, and that the ALJ accounted for the treatment notes about Jeannetta H.'s low vision in her analysis. Further, the Commissioner argues the ALJ assessed an RFC that was more restrictive "than that offered by any medical source, all of whom were familiar with Plaintiff's low vision in her left eye but likewise assessed no specific limitations." [Filing No. 13 at 5.]

Jeannetta H. filed no reply.

An RFC represents "the maximum a person can do—despite his limitations—on a regular and continuing basis, which means roughly eight hours a day for five days a week." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (internal quotation marks omitted). In determining an

individual's RFC, "the ALJ *must* evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano*, 556 F.3d at 563 (emphasis added). An ALJ must provide more than a "cursory analysis" for rejecting limitations alleged by a claimant. *Id.* That is so because the ALJ must build an "accurate and logical bridge" between the evidence and the result. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). A court must uphold an ALJ's RFC determination "if the evidence supports the decision and the ALJ explains his analysis of the evidence with enough detail and clarity to permit a meaningful review." *Arnett v. Astrue*, 676 F.3d 586, 591-92 (7th Cir. 2012).

The ALJ concluded that Jeannetta H. was not disabled and:

> had the RFC to perform light work as defined in 20 CFR 404.1567(b) except she can perform frequent reaching, handling, fingering, and feeling bilaterally. The claimant can climb ramps and stairs occasionally, never climb ladders, ropes, or scaffolds; frequently balance and stoop, and occasionally kneel, crouch, and crawl. The claimant can never work at unprotected heights, can frequently work with moving mechanical parts, frequently operate a motor vehicle, and work in moderate noise. The claimant is able to perform simple, routine and repetitive tasks but not at a production rate pace, and she is able to make simple work-related decisions. The claimant is able to interact with supervisors and coworkers occasionally but can never work in-tandem or in group settings. The claimant can have no interaction with the public. The claimant is able to occasionally tolerate few changes in a routine work setting.

[Filing No. 9-2 at 39.]

The ALJ did not err in formulating an RFC that did not provide a restriction for Jeannetta H.'s low vision. The ALJ acknowledged her low vision in her left eye, stating, "[t]he claimant has low vision in the left eye per the record." [Filing No. 9-2 at 36, citing Filing No. 9-8 at 286 (Exhibit B16F)]. The treatment note the ALJ cites states: "[b]ilateral Near [Acuity]: N/A (unable to see in L eye) Bilateral Distance: N/A (unable to see in L eye) R Distance: 20/25 L Near: N/A (unable to see in L eye) L Distance: N/A (unable to see in L eye). Patient states that she has chronic inability

7

to see in her left eye due to an old injury. She has not been able to see hardly at all out of her left eye for many years. She states this is unchanged from her baseline." [Filing No. 9-8 at 286.]

Jeannetta H. does not argue the ALJ omitted any specific restrictions opined to in the record. However, the record does support the ALJ's conclusion that it was not preclusive—even in the context of her other, severe impairments. Plaintiff told consulting physician Dr. Melissa Sprinkle her last occupation was as an auditor in 2018. She said she worked 70-80 hours per week, and did not mention difficulties working with her eyesight. [Filing No. 9-7 at 395-96.] Jeannette H. told consulting psychologist Dr. Elizabeth Rayl she "drives as needed," which does not indicate a specific eyesight limitation. [Filing No. 9-7 at 557.] Moreover, the record shows Jeannetta H.'s poor left vision was unchanged from the baseline—it did not worsen in the relevant time period. She also had near perfect vision in her right eye. [Filing No. 9-8 at 38.] The ALJ did not err in not accounting for Jeannetta H.'s low vision because the record does not include specific limitations for this condition beyond mention of the condition itself. The ALJ noted the condition but did not analyze it further because no medical opinion suggested a limitation, nor did Jeannetta H.'s own testimony speak to her long standing low left eye vision. During her hearing, Jeannetta H. never mentioned her vision. [Filing No. 9-2 55-92.] And in her briefing on this issue, she does not tell the Court what restrictions the ALJ should have included. *See Pavlicek v. Saul*, 994 F.3d 777, 781, 784 (7th Cir. 2021) (affirming ALJ decision where it is "unclear what kinds of work restrictions might address [a claimant's] limitations" because the claimant "hypothesizes none"); *Dawn M. v. Kijakazi*, 2023 WL 2595545, *6 (S.D. Ind. Mar. 22, 2023) ("Evidence of the severity of Dawn's migraines and hypersomnolence, by itself, does not warrant remand. The Court cannot simply assume that time off-task or absenteeism are the 'logical impact[s]' of these conditions.")

**B. The ALJ sufficiently supported her subjective symptom analysis**

Next, Jeannetta H. argues the ALJ erred in discrediting Jeannetta H.'s testimony about the severity of her subjective symptoms. [Filing No. 11 at 21.] Specifically, Jeannetta H. argues the ALJ failed to accurately address her chronic pain treatment, therefore "failing to build a logical bridge to his conclusion that Jeannetta's allegations of chronic physical pain were not credible." [Filing No. 11 at 18.] Jeannetta H. argues that that the ALJ was incorrect in finding her statements about the intensity, persistence, and limiting effects of her symptoms inconsistent based on her ability to perform some work. [Filing No. 11 at 18.] And she argues the ILJ incorrectly made her credibility analysis based solely on objective medical evidence. [Filing No. 11 at 18.][4]

In response, the Commissioner argues Jeannetta H. is unable to succeed on her one developed argument: that the ALJ solely relied on objective evidence without considering the required factors. [Filing No. 13 at 12.] The Commissioner points to a string of factors the ALJ considered in making her credibility determination and argues she "more than satisfied the minimal articulation standards set forth by the Seventh Circuit." [Filing No. 13 at 14.]

An ALJ's subjective symptom analysis is given special deference so long as the ALJ explains his or her reasoning and it is supported by the record. *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017). A reviewing court will only overturn an ALJ's subjective symptom analysis if it is "patently wrong." *Id.*

SSR16-3p addresses the method by which ALJs should "evaluate statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims." SSR 16-3p, *available*

---

[4] As discussed below, Court notes SSR 16-3p became effective on March 28, 2016, 2017 WL 5180304, at *13 (S.S.A. Oct. 25, 2017), replacing SSR 96-7p, and requires an ALJ to assess a claimant's subjective symptoms rather than assessing her "credibility." The Seventh Circuit has explained that the "change in wording is meant to clarify that administrative law judges are not in the business of impeaching a claimant's character." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016).

*at* 2017 WL 5180304. SSR 16-3p eliminates "the use of the term 'credibility'" from the evaluation process, and the SSA clarified that "subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation." *Id.* at *1. SSR 16-3p instructs ALJs to use the following method to evaluate statements regarding the intensity, persistence, and limiting effects of symptoms:

> Consistent with our regulations, we instruct our adjudicators to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms. We evaluate the intensity and persistence of an individual's symptoms so we can determine how symptoms limit ability to perform work-related activities for an adult.

*Id.* at *2. Thus, ALJs use a two-step evaluation of an individual's subjective symptoms. First, an ALJ "must determine whether a claimant has a medically determinable impairment that could reasonably be expected to produce an individual's symptoms." *Srp v. Colvin*, 2016 WL 7507781, at *2 (C.D. Ill. July 14, 2016). If the claimant is found to have such a medically determinable impairment at step one, the ALJ moves to the second step in which the ALJ "must consider all of the evidence in the record to determine the intensity, persistence, and limiting effects of the claimant's symptoms." *Id.* To conduct this analysis at the second step, SSR 16-3p instructs as follows:

> In considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; and individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.

2017 WL 5180304, at *4. In evaluating the claimant's subjective symptoms, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating

10

factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano*, 556 F.3d at 562 (citations omitted); see 20 CFR § 404.1529(c); SSR 16-3p.

Here, the ALJ supported her subjective symptom analysis with substantial evidence. First, Jeannetta H. argues the ALJ was "nonsensical" in stating the claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record *for the reasons explained in this decision*." [Filing No. 11 at 18 (emphasis added.] While the Court has frowned on the use of this boilerplate language, (*See Goins v. Colvin*, 764 F.3d 677, 681-82 (7th Cir. 2014)),[5] the Court will not remand simply because the ALJ uses it, so long as the ALJ's opinion as a whole provides proper analysis.

Jeannetta H. argues the ALJ failed to discuss her chronic pain treatment, [Filing No. 11 at 18-19], but this is not so. In discussing Jeannetta H.'s testimony about the intensity, persistence, and limiting effects of her symptoms, the ALJ states: "[t]he claimant said she needs assistance with buttons and fastening buttons, and bra. She reported she has pain in her neck, chronic headaches daily, but said medication is helpful." [Filing No. 9-2 at 40.] Throughout her opinion, the ALJ cites to Jeannetta H.'s physical and mental medication usage and treatments. [*See* Filing No. 9-2 at 41 (discussing October 2021 follow up visit at length, including her treatment plan and medication); Filing No. 9-2 at 42 ("The claimant was assessed with acute midline low back pain without sciatica,

---

[5] While *Groins* is applicable in chastising ALJs for using boilerplate language instead of critical analysis, there, the ALJ's "critical failure . . . was the failure to obtain a medical report on the results of the 2010 MRI." Plaintiff does not claim her ALJ failed to consider a crucial medical report.

11

prescribed Flexeril and voltaren and discharged home in stable condition. Thereafter, the claimant continued to receive treatment for musculoskeletal impairments.").]

The ALJ's discussion of her pain continues:

In January 2022, the claimant had another EMG due to left elbow pain and bilateral arm pain, weakness and intermittent tingling. Findings showed evidence for minimal right and mild left median neuropathies at the wrist (carpal tunnel syndrome), and no evidence for ulnar neuropathies at the elbows or cervical motor radiculopathies in the bilateral upper extremities. However, it was noted that compared to the study in 2018, the distal latency on the right median motor study had improved (Exhibit B1F, pp. 74-75). As such, the undersigned has limited the claimant to bilateral frequent handling, fingering, and feeling. [Filing No. 9-2 at 41.]

Subsequently, the claimant underwent a consultative examination in March 2022. Range of motion was decreased in cervical and lumbar spine, right shoulder, and with flexion of bilateral knees. However, poor effort was noted on exam (Exhibit B4F, pp 1-4). The examiner documented that she believed the claimant was exaggerating her symptoms. [Filing 9-2 at 41.]

During a follow up PCP visit in May 2022 for low back pain, the claimant reported her pain improved, but that she still had tenderness. She stated she was taking Norco daily. In addition, she reported intermittent right knee pain for the last few months, worse with prolonged standing and walking. On exam, there was tenderness of the medial right knee and positive McMurray sign on the right knee. Her low back pain symptoms were assessed as improved, and she was started on naproxen in addition to her pain medication to address back and knee pain. [Filing No 9-2 at 42.]

The Court agrees with the Commissioner that the ALJ considered Jeannetta's H.'s reports of chronic pain, but "she did not find that the record showed Plaintiff's symptoms as limiting as she claimed." [Filing No. 13 at 13.] However, "[s]ubjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence." *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022) (citations omitted). The Court agrees the ALJ was greatly persuaded by the medical opinions and found them to be conflicting with Jeannetta H.'s testimony and her daughter's third-party report. But the Court cannot say this is reversible error. "Because the ALJ's weighing of [claimant's]

12

reported symptoms in the context of the whole record is supported by substantial evidence, we find no reversible error on this front either." *Ray v. Saul*, 861 F. App'x 102, 107 (7th Cir. 2021).

In reaching her subjective symptom determination, the ALJ considered Plaintiff's subjective testimony about her pain, physical, and mental limitations, including her sit/stand/lift testimony, [Filing No. 9-2 at 43], and whether objective medical evidence supported these specific limitations. Although she found it ultimately did not, she still addressed some strength limitations in the RFC. [Filing No. 9-2 at 43.] The ALJ also considered Jeannetta's mood (including her depression and anxiety) and her ability to interact with others, noting no ongoing change or worsening of mental limitations since the alleged onset date. [Filing No. 9-2 at 43.] She also considered Plaintiff's treatment and medication history, her positive responses to some medications, reports from Dr. Elrod that Dr. Elrod was "pretty sure" Plaintiff was exaggerating her symptoms, and reports from consulting psychologist Dr. Melissa Sprinkle that Plaintiff was uncooperative during her examination. [Filing No. 9-2 at 39-45.] *Schrank v. Saul*, 843 F. App'x 786, 789 (7th Cir. 2021) ("[T]he ALJ's credibility determination was not 'patently wrong,' because she found [claimant] not credible for several reasons that were adequately supported by the record.").

The ALJ also considered the Third-Party Function Report completed by Jeannetta H.'s daughter and found it consistent with "some difficulty" with physical functioning, which she took "into account when limiting the claimant to light work." [Filing No. 9-2 at 45.] Even if this Court would have evaluated some of the subjective testimony differently, the Court is not permitted to reweigh the evidence. *Grotts,* 27 F.4th at 1279. "Although Claimant disagrees with the ALJ's assessment and wants the evidence to be weighed differently, she has not shown that the ALJ's

13

evaluation of her subjective symptoms is patently wrong." *Delores K. v. Dudek*, 2025 WL 1180829, at *2 (N.D. Ill. Apr. 23, 2025).

## IV.
### CONCLUSION

For the reasons detailed above, the undersigned recommends the Court **AFFIRM** the ALJ's decision denying Jeannetta H. benefits.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Failure to file timely objections within fourteen (14) days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

Date: 8/8/2025

_____
Mario Garcia
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF to all counsel of record.**