**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| JEANNETTA H.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:24-cv-01205-TWP-MG |
| | ) | |
| FRANK J. BISIGNANO Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ADOPTING THE MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION, AFFIRMING THE ALJ'S DECISION

Plaintiff Jeannetta H. requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act from the Social Security Administration ("SSA") (Filing No. 1). The Court referred this matter to the Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) (Filing No. 14). The Magistrate Judge submitted his Report and Recommendation on August 8, 2025, recommending that the decision of the Commissioner be affirmed on all issues (Filing No. 15). Jeannetta H. timely filed objections to the Magistrate Judge's Report and Recommendation (Filing No. 16), to which the Commissioner responded (Filing No. 17). No Reply was filed by Jeannetta H. For the reasons set forth below, the Court **overrules** Jeannetta H.'s objections and **adopts** the Magistrate Judge's Report and Recommendation, **affirming** the decision of the Commissioner.

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

## I.    BACKGROUND

An extensive elaboration of the procedural and factual background of this matter is not necessary as the parties and the Magistrate Judge have sufficiently detailed the background of this matter in the briefs and the Report and Recommendation.. Accordingly, the Court mentions only those facts that are relevant to this decision.

Jeannetta H. was 46 years old on September 20, 2018—the date of her alleged onset of disability (Filing No. 11 at 5). Jeannetta H. has a high school education and past work experience as a food truck operator and truck driver. *Id*. Her December 2021 application for DIB alleges she can no longer work because she has poor vision, arthritis, depression, uncontrollable high blood pressure, bilateral carpal tunnel syndrome, cervical radiculopathy, chronic bilateral low back pain with right-sided sciatica, lipoma of the left lower extremity, and cervical spondylosis with radiculopathy. *Id*.

A hearing was held on October 16, 2023, before Administrative Law Judge ("ALJ") Noell F. Allen in Indianapolis, Indiana. *Id*. at 3. Following the hearing, the ALJ followed the five-step sequential evaluation set forth in 20 C.F.R. § 416.920(a)(4) and concluded that Jeannetta H. was not disabled (Filing No. 9-3). Specifically, the ALJ found that at step one, Jeannetta H. has not engaged in substantial gainful activity since September 20, 2018, the alleged onset date. *Id*. at 7. At step two, Jeannetta H. "has the following severe impairments: anxiety, depression, cervical spondylosis with radiculopathy, lumbar degenerative disc disease with radiculopathy, hypertension, carpal and cubital tunnel syndrome, and obesity." *Id*. at 8. At step three, Jeannetta H. did not "have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in 20 C.F.R. 404.1520(d), 404.1525 and 404.1526. *Id*. At step four, the ALJ found that Jeannetta H. was unable to perform any past relevant work. *Id*. at

17. Finally, at step five, the ALJ considered Jeannetta H.'s age, education, work experience, and residual functional capacity and concluded that there are jobs that exist in significant numbers in the national economy that she can perform. *Id*.

## II.    LEGAL STANDARD

When reviewing the Commissioner's decision, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). To be affirmed, the ALJ must articulate her analysis of the evidence in her decision, and while she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into her reasoning . . . [and] build an accurate and logical bridge from the evidence to her conclusion." *Dixon*, 270 F.3d at 1176. The Court "must be able to trace the ALJ's path of reasoning" from the evidence to her conclusion. *Clifford v. Apfel*, 227 F.3d 863, 874 (7th Cir. 2000).

When a party raises specific objections to elements of a Magistrate Judge's report and recommendation, the district court reviews those elements de novo, determining for itself whether the Commissioner's decision as to those issues is supported by substantial evidence or was the result of an error of law. *See* Fed. R. Civ. Pro. 72(b). The district court "makes the ultimate decision to adopt, reject, or modify the report and recommendation, and it need not accept any portion as

3

binding; the court may, however, defer to those conclusions . . . to which timely objections have not been raised by a party." *Sweet v. Colvin*, No. 12-cv-439, 2013 WL 5487358, at *1 (S.D. Ind. Sept. 30, 2013) (citing *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 759–61 (7th Cir. 2009)).

## III.    DISCUSSION

Jeannetta H. argues the Court should decline to adopt the R&R and reverse the Commissioner's decision or remand for further proceedings because the ALJ committed legal errors in two ways. First, the ALJ erred by failing to create a logical bridge in failing to account for her low vision in the residual functional capacity ("RFC") assessment. Second, the ALJ erred by failing to properly address SSR 16-3p in her subjective symptom evaluation. The Court will address each argument in turn.

### A.    Failure to Incorporate Low Vision into the RFC

Jeannetta H. first argues that the ALJ erred by finding her low vision in her left eye to be a non-severe impairment and failing to account for the deficient bilateral vision in her RFC assessment (Filing No. 11 at 12). Jeannetta H. further contends that the jobs the ALJ found her capable of performing require "at least frequent near acuity." *Id*. Jeannetta H. argues that the "ALJ found that [she] has severe impairments including anxiety, depression, cervical spondylosis with radiculopathy, lumbar degenerative disc disease with radiculopathy, hypertension, carpal and cubital tunnel syndrome, and obesity[,]" (Filing No. 9-2 at 36), and because of this finding, the ALJ was required to consider "the aggregate effect of this entire constellation of ailments— including those impairments that in isolation are not severe." (Filing No. 11 at 12 (quoting 20 C.F.R. § 404.1523)). Jeannetta H. argues that the hypothetical question to the vocational expert was flawed because it was based on the RFC assessment which failed to include a limitation for her low vision. *Id*. at 14.

4

The Commissioner contends that the RFC assessment was not flawed because the ALJ accounted for the treatment notes about Jeannetta H.'s low vision in her analysis. The Commissioner contends that the ALJ assessed an RFC that was more restrictive "than that offered by any medical source, all of whom were familiar with [Jeannetta H.'s] low vision in her left eye but likewise assessed no specific limitations." (Filing No. 13 at 5). Here, the Court agrees with the Magistrate Judge that the ALJ did not err in failing to incorporate an RFC limitation for Jeannetta H.'s low vision.

An "RFC represents the maximum a person can do—despite his limitations—on a regular and continuing basis, which means roughly eight hours a day for five days a week." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (internal quotation marks and citation omitted). In determining an individual's RFC, "the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). An ALJ must provide more than a "cursory analysis" for rejecting limitations alleged by a claimant. *Id*. That is so because the ALJ must build an "accurate and logical bridge" between the evidence and the result. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). A court must uphold an ALJ's RFC determination "if the evidence supports the decision and the ALJ explains his analysis of the evidence with enough detail and clarity to permit a meaningful review." *Arnette v. Astrue*, 676 F.3d 585, 591–92 (7th Cir. 2012).

The ALJ concluded Jeannetta H. was not disabled and:

[H]ad the RFC to perform light work as defined in 20 CFR 404.1567(b) except she can perform frequent reaching, handling, fingering, and feeling bilaterally. The claimant can climb ramps and stairs occasionally, never climb ladders, ropes, or scaffolds; frequently balance and stoop, and occasionally kneel, crouch, and crawl. The claimant can never work at unprotected heights, can frequently work with moving mechanical parts, frequently operate a motor vehicle, and work in moderate

> noise. The claimant is able to perform simple, routine and repetitive tasks but not at a production rate pace, and she is able to make simple work-related decisions. The claimant is able to interact with supervisors and coworkers occasionally but can never work in-tandem or in group settings. The claimant can have no interaction with the public. The claimant is able to occasionally tolerate few changes in a routine work setting.

(Filing No. 9-2 at 39).

The Court agrees with the Magistrate Judge that the ALJ did not err in formulating an RFC that did not provide a restriction for Jeannetta H.'s low vision. First, the ALJ specifically acknowledged Jeannetta H.'s low vision in her left eye stating, "[t]he claimant has low vision in the left eye per the record." *Id*. at 36. Second, the record supports the ALJ's conclusion because Jeannetta H.'s chronic inability to see in her left eye is due to an old injury after which she performed work activities. Jeannetta H. told the consulting physician that her last occupation was working as an auditor in 2018 where she worked 70–80 hours per week but never mentioned difficulties working with her eyesight (Filing No. 9-7 at 395–96).

Moreover, the ALJ's conclusion was supported because the record does not include any limitations for Jeannetta H.'s eyesight beyond merely mentioning it. The ALJ properly noted the condition but did not discuss it further because no medical opinion indicated that Jeannetta H. had limitations due to this condition. Jeannetta H. also does not provide the Court with the restrictions she believes the ALJ should have included. Accordingly, the Court agrees with the Magistrate Judge that the ALJ did not err in not including an RFC limitation for Jeannetta H.'s low vision in her left eye. *See Pavlicek v. Saul*, 994 F.3d 777, 781, 784 (7th Cir. 2021) (affirming ALJ decision where it is "unclear what kinds of work restrictions might address [a claimant's] limitations" because the claimant "hypothesizes none"); *see also Dawn M.C. v. Kijakazi*, No. 22-cv-431, 2023 U.S. Dist. LEXIS 48277, at *15–16 (S.D. Ind. Mar. 22, 2023) ("Evidence of the severity of Dawn's migraines and hypersomnolence, by itself, does not warrant remand. The Court cannot simply

assume that time off-task or absenteeism are the 'logical impact[s]' of these conditions.");
*Carmelitta W. v. Saul*, 19-cv-34, 2020 U.S. Dist. LEXIS 266917, at *3 (S.D. Ind. Jan. 17, 2020)
("Pointing to a diagnosis and saying it would hinder a claimant's ability to work is not sufficient
to establish functional limitations.").

**B.**      **Failure to Support Subjective Symptom Evaluation**

Second, Jeannetta H. argues that the ALJ erred in discrediting her testimony about the
severity of her subjective symptoms (Filing No. 11 at 21). Specifically, Jeannetta H. argues that
the ALJ "fail[ed] to build a logical bridge to [her] conclusion that [Jeannetta H.'s] allegations of
chronic pain were not credible." *Id*. at 18. Jeannetta H. argues that the ALJ was incorrect in finding
her statements about her symptoms inconsistent based on her ability to perform work and the ALJ
incorrectly made her credibility analysis based solely on objective medical evidence. *Id*.

First, SSR 16-3p became effective on March 16, 2016. 2016 SSR LEXIS 4, at *34. Under
SSR 16-3p, the ALJ must first determine whether the claimant has a medically determinable
impairment that could reasonably be expected to produce the claimant's alleged symptoms. *Id*. at
*5. Then, the ALJ must evaluate the intensity and persistence of a claimant's symptoms and
determine the extent to which they limit her ability to perform work-related activities. *Id*. at *9.
"In evaluating a claimant's credibility, the ALJ must comply with Social Security Rule 16-3p and
articulate the reasons for the credibility determination." *Karen A.R. v. Saul*, No. 18-cv-2024, 2019
U.S. Dist. LEXIS 124806, at *12 (S.D. Ind. July 26, 2019).

An ALJ's credibility finding is generally given considerable deference and only overturned
if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006). An ALJ's
evaluation is "patently wrong" and subject to remand when the ALJ's finding lacks any explanation
or support. *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014). Ultimately, the ALJ must offer an

explanation that allows the Court to determine whether he reached his decision in a rational manner, logically based on his specific findings and the evidence in the record. *Murphy*, 759 F.3d at 816. Thus, "[a]s long as the ALJ's decision is supported by substantial and convincing evidence, it deserves this court's deference." *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007).

Jeannetta H. takes issue with the ALJ's "nonsensical" statement that the claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Filing No. 11 at 18). While the Court discourages the use of boilerplate language such as this, (*see Goins v. Colvin*, 764 F.3d 6777, 681–682 (7th Cir. 2014)), the use of such language alone does not warrant remand so long as the ALJ's opinion provided a sufficient analysis.

Jeannetta H. argues the ALJ failed to discuss her chronic pain treatment (Filing No. 11 at 18–19). However, as the Magistrate Judge found, the ALJ discussed the intensity, persistence, and limiting effects of Jeannetta H.'s symptoms by stating "[t]he claimant said she needs assistance with buttons and fastening buttons, and bra. She reported she has pain in her neck, chronic headaches daily, but said medication is helpful." (Filing No. 9-2 at 40). The ALJ also provided a detailed discussion of Jeannetta H.'s pain stating:

> In January 2022, the claimant had another EMG due to left elbow pain and bilateral arm pain, weakness and intermittent tingling. Findings showed evidence for minimal right and mild left median neuropathies at the wrist (carpal tunnel syndrome), and no evidence for ulnar neuropathies at the elbows or cervical motor radiculopathies in the bilateral upper extremities. However, it was noted that compared to the study in 2018, the distal latency on the right median motor study had improved (Exhibit B1F, pp. 74-75). As such, the undersigned has limited the claimant to bilateral frequent handling, fingering, and feeling.

Subsequently, the claimant underwent a consultative examination in March 2022. Her height was 65 inches, and weight 209 pounds, and she was noted to be obese. Strength was 5/5 throughout. There was no spinal/paraspinal tenderness, and no abnormal spine curvatures. She was able to lay straight back on the table. Straight leg raise test was negative for radiating pain in seated position. Straight leg raise test was positive for radiating pain in supine position bilaterally. Her gait was normal. Grip strength was 5/5 bilaterally. Range of motion was decreased in cervical and lumbar spine, right shoulder, and with flexion of bilateral knees. However, poor effort was noted on exam (Exhibit B4F, pp 1-4). The examiner documented that she believed the claimant was exaggerating her symptoms.

During a follow up PCP visit in May 2022 for low back pain, the claimant reported her pain improved, but that she still had tenderness. She stated she was taking Norco daily. In addition, she reported intermittent right knee pain for the last few months, worse with prolonged standing and walking. On exam, there was tenderness of the medial right knee and positive McMurray sign on the right knee. Her low back pain symptoms were assessed as improved, and she was started on naproxen in addition to her pain medication to address back and knee pain.

(Filing No. 9-2 at 41–42).

Here, the ALJ considered Jeannetta H.'s reports of chronic pain, but did not find her symptoms to be as limiting as Jeannetta H. claimed. In reaching her subjective symptom determination, the ALJ considered Jeannetta H.'s testimony about her symptoms and whether the medical evidence supported such testimony. *Id*. at 43. The ALJ considered Jeannetta H.'s ability to interact with others, noting no ongoing change or worsening of mental limitations since the alleged onset date. *Id*. In addition, the ALJ considered Jeannetta H.'s treatment and medication history, her positive responses to medication, Dr. Elrod's report that he was "pretty sure" Jeannetta H. was exaggerating her symptoms, and reports from Dr. Melissa Sprinkle that Jeannetta H. was uncooperative during her examination. *Id*. at 39–45. The Court agrees with the Magistrate Judge that the ALJ's determination was not patently wrong in finding Jeannetta H. not credible for reasons supported by the record. *See Schrank v. Saul*, 843 F. App'x 786, 789 (7th Cir. 2021) ("[T]he ALJ's credibility determination was not 'patently wrong,' because she found [claimant] not credible for several reasons that were adequately supported by the record.").

9

Finally, as the Magistrate Judge noted, the ALJ considered the Third-Party Function Report completed by Jeannetta H.'s daughter and found it consistent with "some difficulty" with physical functioning, which she took "into account when limiting the claimant to light work." (Filing No. 9-2 at 45). Although Jeannetta H. disagrees with the ALJ's assessment and wants the Court to reweigh the evidence, this is impermissible. *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022). Accordingly, the Court finds that the ALJ's decision was not patently wrong because it was supported by specific and substantial evidence in the record.

## IV.    CONCLUSION

For the reasons stated above, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation and **OVERRULES** Jeannetta H.'s Objections. The final decision of the Commissioner is **AFFIRMED**.

**SO ORDERED**.

Date:    9/30/2025

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Brian J. Alesia
Social Security Administration
brian.alesia@ssa.gov

Elaine Kuntz
Social Security Administration
elaine.kuntz@ssa.gov

Kirsten Elaine Wold
Hankey Marks & Crider
kwold@hankeylaw.com

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
shelese.woods@usdoj.gov